IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PARIS LAVAR GANTZ, | : | Civil No. 3:19-cv-446 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| MARK GARMAN, | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Paris Lavar Gantz ("Gantz"), an inmate who was housed at all relevant times at the State Correctional Institution, Rockview, Pennsylvania ("SCI-Rockview"), initiated this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 9). The sole named Defendant is Superintendent Mark Garman. (*Id.*). Presently pending before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 19). Gantz failed to file a brief in opposition to Defendant's motion and the time for responding has now passed.[1] For the reasons set forth below, the Court will grant the motion.

---

[1] Gantz was directed to file a brief in opposition to Defendant's motion and was admonished that failure to file an opposition brief would result in Defendant's motion being deemed unopposed. (Doc. 23) (citing M.D. PA. LOCAL RULE OF COURT 7.6). (*See also* Doc. 2, Standing Practice Order in Pro Se Plaintiff Cases, at 2). Rather than file a brief in opposition to Defendant's motion, Gantz filed a motion (Doc. 25) for summary judgment in response to Defendant's motion.

I.   <u>Legal Standard</u>

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not

entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## II. Allegations of the Amended Complaint

Gantz alleges that, on May 14, 2018, he was transferred from general population to the restricted housing unit ("RHU") after being issued a misconduct.  (Doc. 9, pp. 2, 10).  He alleges that after being transferred to the RHU, he was separated from certain personal property.  (*Id.* at pp. 2, 12).  Gantz remained in the RHU from May 14, 2018 through May 21, 2018.  (*Id.* at pp. 2-3).  During this time, Gantz alleges that Defendant Garman had

"vicarious care, custody and control" of Gantz's personal property. (*Id.* at p. 2). Upon his release from the RHU on May 21, 2018, Gantz asserts that some of his personal property was not returned to him. (*Id.* at p. 3). Specifically, he contends that he did receive his "legal record of Reading Police Department (RPD): Incident Report No.: 2014-73465", with an alleged value of $17,420.00. (*Id.* at pp. 3, 6).

On May 23, 2018, Gantz filed grievance number 738759 regarding the missing property. (*Id.* at p. 12). On May 31, 2018, the Facility Grievance Coordinator denied the grievance on initial review. (*Id.* at pp. 3, 14). In the response, the Facility Grievance Coordinator noted that Gantz self-packed his property prior to being transported to the RHU and signed an inventory form indicating that "ALL" of his property was present and accounted for, and no property was missing or damaged, when he was released from the RHU. (*Id.* at p. 14).

Gantz next alleges that, on September 24, 2018, he was again transferred from general population to the RHU after receiving a misconduct. (*Id.* at pp. 4, 16). He alleges that after being transferred to the RHU, he was separated from certain personal property. (*Id.* at p. 20). On this occasion, Gantz remained in the RHU from September 24, 2018 through September 29, 2018. (*Id.* at p. 4). During this time, Gantz alleges that Defendant Garman had "vicarious care, custody and control" of Gantz's personal property. (*Id.*). Gantz alleges that when he was released from the RHU on September 24, 2018, his personal tablet device was damaged. (*Id.* at pp. 4-5).

On October 5, 2018, Gantz submitted grievance number 764342 regarding the damaged personal property. (*Id.* at pp. 5, 20-21). On October 28, 2018, the Facility Grievance Coordinator denied the grievance on initial review. (*Id.* at p. 27). In the response, the Facility Grievance Coordinator noted that the initial inventory form indicated that the screen of Gantz's tablet was cracked. (*Id.*). It was further noted that the tablet screen was cracked before Gantz was transported to the RHU and before the property was removed from his cell in preparation for the transfer. (*Id.*).

III.   Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Lack of Personal Involvement

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

The amended complaint failed to establish that Defendant Garman was personally involved in any of the alleged wrongs. Gantz is suing Superintendent Garman because he is purportedly liable for the actions of his subordinates. (Doc. 9, pp. 3-7). He alleges that Defendant Garman "vicariously" violated his constitutional rights and that Defendant Garman had "vicarious care, custody and control" of Gantz's personal property. (*Id.* at pp. 2-7). Gantz's claims plainly seek to hold Defendant Garman vicariously liable for the

actions of his subordinates.  These claims are, in essence, nothing more than an assertion of *respondeat superior* liability which seeks to hold Defendant Garman liable based on his supervisory role as Superintendent of the facility.  This ground of constitutional liability has been squarely rejected by the courts.  See *Rode*, 845 F.2d at 1207; see also *Ashcroft*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Consequently, Defendant's motion to dismiss on the basis of lack of personal involvement will be granted.

To the extent that Gantz attempts to hold Superintendent Garman liable based on his involvement in the grievance procedure, this claim also fails.  Inmates do not have a constitutional right to prison grievance procedures.  See *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam) (explaining that "prison inmates do not have a constitutionally protected right to a grievance process").  The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation.  See *Rode*, 845 F.2d 1195, 1207 (3d Cir. 1998) (supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (not precedential) ("The District Court

properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (not precedential) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation). Thus, Gantz's attempt to establish liability against Superintendent Garman based upon his denial of a grievance does not support a constitutional claim, and this claim will be dismissed. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for liability).

    B.    Official Capacity Claim

Defendant Garman next argues that any claims seeking monetary damages against him in his official capacity are barred by the Eleventh Amendment. (Doc. 20, pp. 11-12). Personal capacity suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law. Official capacity suits, in contrast, generally represent an action against an entity of which the government official is an agent. *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978). When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). However, the doctrine of sovereign immunity, established by

the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 117 (1984); *Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252, 265 (1996); *Lavia v. Pennsylvania*, 224 F.3d 190, 195-96 (3d Cir. 2000). That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is to be imposed. *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974). Congress has not abrogated the immunity regarding Gantz's claims, nor has Pennsylvania waived this grant of immunity. *See* 42 PA. CONS. STAT. ANN. § 8521(b). The allegations of the amended complaint do not fall under any one of the nine listed categories for which immunity has been waived by the Commonwealth of Pennsylvania.[2] *See* 42 PA. CONS. STAT. ANN. § 8522(b). Hence, Gantz's claims for money damages against Defendant Garman in his official capacity are barred by sovereign immunity. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010).

IV. <u>Leave to Amend</u>

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

---

[2] The nine categories for which sovereign immunity will not apply are: (1) vehicles in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) the care, custody, or control of personal property; (4) a dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways created by potholes or sinkholes; (6) the care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. *See* 42 PA. CONS. STAT. ANN. § 8522(b).

Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons set forth above, Gantz's claims against Defendant Garman are legally and factually flawed and thus incurable. Therefore, the Court concludes that curative amendment would be futile.

## V.     Gantz's Motion for Summary Judgment

In response to Defendant's motion to dismiss, Gantz filed a motion (Doc. 25) for summary judgment. Because Gantz's amended complaint is subject to dismissal for failure to state a claim, summary judgment is clearly unwarranted and Gantz's motion will be dismissed as moot. Additionally, Gantz has failed to comply with Local Rule 7.5 which requires a party seeking summary judgment to submit a brief in support of the motion. Finally, a district court is "rarely justified in granting summary judgment" prior to the close of discovery. *Doe v. Abington Friends School*, 480 F.3d 252, 25 (3d Cir. 2007). Thus, even if the amended complaint had survived Defendant's Rule 12(b)(6) challenge, Gantz's summary judgment motion would be premature. For each of these reasons, Gantz's motion for summary judgment will be dismissed.

## VI.    Conclusion

Based on the foregoing, the Court will grant Defendant's motion (Doc. 19) to dismiss and dismiss Gantz's motion (Doc. 25) for summary judgment.

A separate Order shall issue.

        _s/ Robert D. Mariani_
Robert D. Mariani
United States District Judge

Dated: May 13, 2020